**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02478-LTB

CORNELIUS D. MAHONEY and BARBARA MORRIS, M.D.
Plaintiffs

v.

CENTURA HEALTH CORPORATION
Defendant.

---

**PLAINTIFFS' MOTION FOR REMAND FOR LACK OF SUBJECT MATTER JURISDICTION AND REQUEST FOR EXPEDITED RULING**

---

Plaintiffs Cornelius D. Mahoney and Dr. Barbara Morris ("Plaintiffs"), by and through their undersigned counsel, submit the following Motion for Remand for Lack of Subject Matter Jurisdiction and Request for Expedited Ruling ("Motion"):

**Certificate of Conferral Pursuant to D.C.COLO.LCivR 7.1.** Undersigned counsel certifies that he conferred with counsel for Defendant regarding the relief requested in this Motion. Defendant opposes this Motion.

**BACKGROUND**

On August 21, 2019, Plaintiffs filed a complaint ("Complaint") in Colorado state court seeking declaratory relief regarding the interpretation of two Colorado statutes governing the practice of medicine in Colorado. The Complaint arises out of the doctor-patient relationship between plaintiff Dr. Barbara Morris and her patient, plaintiff Cornelius "Neil" Mahoney. Mr. Mahoney has terminal, incurable stage 4 cancer and may have only months left to live. After receiving his devastating diagnosis this summer, Mr. Mahoney asked Dr. Morris to qualify him

1

for a prescription for medical aid-in-dying ("AID") medication pursuant to the Colorado End-of-Life Options Act, C.R.S. § 25-48-101, *et seq.* ("EOLOA"). EOLOA permits physicians to prescribe AID medication "to a qualified individual" for that individual "to self-administer to bring about a peaceful death." C.R.S. § 25-48-102 (7). Mr. Mahoney told Dr. Morris that, if he were to use AID medication, he would do so in the comfort of his own home.

In response to EOLOA, Dr. Morris's employer Centura Health Corporation ("Centura") had promulgated a policy ("Policy") prohibiting its physicians from (1) engaging "in any stage of qualifying a patient for use of Medical Aid in Dying Medication" and (2) prescribing AID medication even if the patient does not intend to use the medication on Centura's premises. (*See,* ECF No. 5, p. 27). In 2018, Dr. Morris used internal channels to ask Centura to reconsider the Policy. During that process, Centura acknowledged to Dr. Morris that the Policy "conflicts with Colorado law[.]" Specifically, whereas EOLOA permits a health care facility to prohibit a physician from writing a prescription for medical aid-in-dying medication "for a qualified individual who intends to use the medical aid-in-dying medication on the facility's premises," C.R.S. § 25-48-118(1) ("Opt-Out Provision"), the Policy prohibits Centura physicians from (1) engaging "in any stage of qualifying a patient for use of Medical Aid in Dying Medication" and (2) prescribing AID medication even if the patient does not intend to use the medication on Centura's premises. (ECF No. 5, p. 27).

When Mr. Mahoney made his request to Dr. Morris in 2019, Dr. Morris responded that Centura's policy prohibited her from qualifying Mr. Mahoney under the statute and/or writing him a prescription for AID medication. Because of Centura's policy, Dr. Morris did not qualify Mr. Mahoney under EOLOA; did not write him a prescription for AID medication; and did not provide any other AID-related services or procedures to Mr. Mahoney. Instead of violating Centura's

2

policy, Dr. Morris and Neil turned to the Colorado courts and filed their declaratory judgment action, asking the court to declare, solely as a matter of Colorado law, that Centura cannot maintain and enforce a policy that conflicts with both EOLOA and a separate Colorado statute, C.R.S. § 25-3-103.7 ("Corporate Practice Statute"), that prohibits health corporations like Centura from practicing medicine and/or exercising control over a "physician's independent professional judgment concerning the practice of medicine." (ECF No. 5, pp. 13-14, ¶¶ 95-111).

On August 30, 2019, Centura filed its Notice of Removal. (ECF No. 1). Centura contends that this Court has federal question jurisdiction because Plaintiffs' claims present a federal question and one of the two Colorado statutes Plaintiffs invoke is preempted by federal law. Centura's contentions are factually mistaken and without legal merit. No federal claims are raised in the Complaint and neither of the statutes Plaintiffs invoke are preempted by federal law.

Accordingly, this case should be remanded to Colorado state court. Plaintiffs further request that the Court consider the motion on an expedited basis due to Mr. Mahoney's rapidly deteriorating health and the corresponding need for a swift resolution of the merits of this case.

## SCOPE OF FEDERAL JURISDICATION AND BURDEN OF PROOF

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In *Louisville & Nashville R.R. Co. v. Mottley*, the United States Supreme Court held that a case does not "arise under" federal law unless the "plaintiff's statement of his own cause of action" establishes that plaintiff's case is based upon the Constitution, laws, or treaties of the United States. 211 U.S. 149, 152 (1908). In determining whether federal jurisdiction lies, courts may therefore look only to plaintiff's complaint. *Id.*

Federal subject-matter jurisdiction "cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.,* 696 F. 3d 1018, 1022 (10th Cir. 2012) (citations omitted). The burden of establishing federal jurisdiction by a preponderance of the evidence rests with the party asserting it—in this case, Centura. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016). Courts must resolve all doubts against federal jurisdiction. *Kokkonen*, 511 U.S. 377; *Meade v. Avant of Colo., LLC*, 307 F. Supp. 3d 1134, 1139-40 (D. Colo. 2018).

## ARGUMENT

**No Federal Jurisdiction Lies Because Plaintiffs' Well-Pleaded Complaint Invokes Only State-Law Claims and Issues, and No Federal Law Completely Preempts Plaintiffs' Claims**

The principles articulated in *Mottley* are embodied today in the "well-pleaded complaint rule." *Mescalero*, 519 F.2d 479, 481 (10th Cir. 1975). The rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)). Thus, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.; see also Qwest Corp. v. City of Santa Fe,* 380 F.3d 1258, 1264 n. 1 (10th Cir.2004) ("By omitting federal claims from a complaint, a plaintiff can [generally] guarantee an action will be heard in state court.").

Under the well-pleaded complaint rule, "a federal defense, even one relying on the preclusive effect of a federal statute," is not sufficient to confer federal question jurisdiction. *Felix*, 387 F.3d at 1154; *see also, John Doe (1) v. Archdiocese of Denver*, 413 F. Supp. 2d 1187, 1191 (D. Colo. 2006), Babcock, CJ. ("It is now axiomatic that jurisdiction cannot be predicated upon a

defense that raises a federal question, no matter that the issue might prove to be dispositive."). Likewise, "[t]he fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer subject matter jurisdiction." *Meade*, 307 F. Supp. 3d at1140 (citation omitted). To establish that a case arises under federal law, a plaintiff's well-pleaded complaint "must establish one of two things: either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Firstenberg,* 696 F.3d at1023 (citations and internal quotation marks omitted).

        A. <u>Plaintiffs' Well-Pleaded Complaint Invokes Only State Law Claims and Issues</u>

In the Complaint filed in state court, Plaintiffs did not assert any cause of action under federal law. Centura misleadingly asserts that Plaintiffs ask the state court "to broadly declare that . . . Centura Health-St. Anthony's Hospital, cannot lawfully discipline [Dr. Morris] for conduct in her employment that violates its religious principles." (ECF No. 1, ¶ 7). In fact, the Complaint does <u>not</u> direct the request for relief at Centura's religious principles. Rather, it simply asks the state court to declare that Centura's Policy conflicts with both EOLOA's Opt-Out Provision and the Corporate Practice Statute. (ECF No. 5, pp. 13-14, ¶¶ 98-111). The declarations Plaintiffs seek in the Complaint could just as easily apply to a hypothetical non-religious hospital that adopted a secular policy in contravention of the two state statutes. Plaintiffs' rights and entitlement to relief arise entirely under Colorado, not federal, law.

It appears that Centura is seeking to inject its anticipated constitutional and other federal defenses into the jurisdictional analysis. Under binding Tenth Circuit jurisprudence, and inherent in the well-pleaded complaint rule, federal defenses do not confer federal-question jurisdiction. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996)

("In 'this case, the First Amendment arises only as a potential *defense* to [defendant's] claimed right . . . Thus, we cannot ground our jurisdiction on this basis because 'the First Amendment as a defense does not constitute a basis for federal jurisdiction, for it is fundamental that anticipation of a defense cannot confer jurisdiction.'") (citation omitted); *see also Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 948 (10th Cir. 2014) (jurisdiction is inappropriate where "federal law is merely alleged as a barrier to" the success of a state law claim). Any federal issues invoked in the Notice of Removal are defenses to, and not components of, the claims in the state court Complaint. Accordingly, under the well-pleaded complaint rule, they do not convey subject-matter jurisdiction to a federal court.

### B. Centura Cannot Establish Either of the Two Narrow Exceptions to the Well-Pleaded Complaint Rule

Centura bears the burden of showing that "one of two recognized exceptions to the well-pleaded complaint rule is applicable." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 (10th Cir. 2012). Those two exceptions are (1) that Plaintiffs' state-law claims are "completely preempted" by federal law, or (2) "there is a substantial, disputed federal-law issue necessarily embedded in [Plaintiffs'] state-law claims*." Id.* at 1203-04. Centura cannot meet its burden with respect to either exception.

#### 1. *Plaintiffs' Claims Are Not "Completely Preempted" by Federal Law*

Centura suggests "the state statute" (i.e., the Opt-Out Provision) "would be preempted by the federal statutory exemption of Section 702 of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. 2000e-1" because that provision of the Civil Rights Act "exempts religious organizations from claims that arise from discipline on religious grounds." (ECF No. 1, ¶ 7).[1]

---

[1] Notably, Centura does not suggest any preemption of the Corporate Practice Statute.

"Ordinary" federal preemption—the type Centura asserts—is nothing more than an anticipated defense that does not appear on the face of Plaintiffs' well-pleaded complaint. It therefore does not support removal. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987) (citation omitted).

It is true that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Devon Energy Prod. Co., L.P*, 693 F.3d at 1204. But in order for such "complete" (as opposed to "ordinary") preemption to apply, the claims pled must "fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Id*., at 1205 (citation omitted). Complete preemption is therefore "a rare doctrine" that "represents an extraordinary pre-emptive power." *Id.* "It is so rare that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act." *Id.* (internal citations omitted). Centura's argument that removal is justified because of a purported preemptive effect of Section 702 of the Civil Rights Act fails <u>as a matter of law</u> because Section 702 does not and legally cannot "completely preempt" state law. Centura may seek to assert, in its defenses in state court, that Section 702 has some preemptive effect.[2] But that anticipated defense provides no basis for removal for federal-question jurisdiction.

---

[2] Any such assertion would be incorrect. The Colorado Anti-Discrimination Act ("CADA") similarly excepts "religious organizations" from CADA's prohibition of religious discrimination in employment. *See* C.R.S. § 24-34-402(6). Moreover, the instant lawsuit—which seeks only declaratory relief—contains no claim of religious discrimination, and section 702 is therefore not relevant.

7

2.	*Plaintiffs' Claims Do Not Raise Substantial or Necessary Questions of Federal Law*

Jurisdiction is also improper under the "substantial question" basis for removal jurisdiction. *See generally Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). The "*Grable*" or "'substantial question' branch of federal question jurisdiction is exceedingly narrow," *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (citation omitted), and does not apply here.

For *Grable* jurisdiction to lie, a federal issue must be an "essential element of the plaintiff's claim." *Becker*, 770 F.3d at 947 (quoting *Grable*, 545 U.S. at 315). For *Grable* jurisdiction to attach here, Centura must establish that the Complaint raises a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013). In essence, the court must determine that "the federal issues are essential parts of the plaintiffs' cause of action." *John Doe (1)*, 413 F. Supp. 2d at 1192.

Centura does not address these *Grable* factors, and instead offers the conclusory and unsupported assertion that the Complaint raises "substantial" and "very significant federal issues." (ECF No. 1, ¶¶ 7-8). Centura also does not cite a single case in which a court invoked *Grable* jurisdiction. It did not do so because the cases establishing *Grable* jurisdiction demonstrate precisely why it does not lie here. *See, e.g., Grable*, 545 U.S. at 315 (jurisdiction issue was whether proper notice was given <u>under a federal statute</u>); *Gilmore*, 694 F.3d at 1173 (jurisdiction where "plaintiffs must show that the Secretary's advance approval is required <u>under federal law</u>"); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235 (10th Cir. 2006) ("Plaintiffs must establish that the [federally given] right-of-way prohibited the use to which it was put."). In any event, applying the *Grable* factors here clearly counsels in favor of remand.

**Necessarily raised**. To determine whether an issue is "necessarily" raised, courts ask whether the issue is an "essential element" of the plaintiff's well-pleaded claim. *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012). A federal issue is "essential" where the plaintiff cannot plead a facially viable claim without invoking it. *New York v. Shinnecock Indian Nation*, 701 F.3d 101, 108 (2d Cir. 2012). Here, Plaintiffs' claims (which do not invoke federal law in any fashion) are facially viable, and resolution of those claims turns solely on interpretation of Colorado state law.

**Actually disputed**. For the same reasons, there is no "actually disputed" federal question in the Action. Plaintiffs have raised only Colorado statutory issues. To the extent Centura invokes defenses related to federal issues, they can be litigated in state court, and they do not support removal.

**Substantial**. To determine substantiality, "it is not enough that the federal issue be significant to the particular parties in the immediate suit[.]" *Gunn*, 568 U.S. at 260. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id*. Whatever personal significance Centura may ascribe to its anticipated federal law defenses, there is nothing systematically essential about them from the perspective of the federal system. When a case "involves substantial questions of state as well as federal law, this factor weights against asserting federal jurisdiction." *Gilmore*, 694 F.3d at 1175. (citations and quotation marks omitted). The issues raised in the Complaint can be resolved on state law grounds entirely without regard to federal issues.

**Capable of resolution in federal court without disrupting the federal-state balance approved by Congress**. This fourth requirement "is concerned with the appropriate balance of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 256. It goes without saying that

Colorado state courts are well-equipped to interpret Colorado statutes. They are also fully capable of resolving the federal defenses foreshadowed by Centura. *See, e.g.*, *Asarco Inc. v. Kadish*, 490 U.S. 605 (1989) (state courts . . . possess the authority absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law."). Moreover, states have a "special responsibility for maintaining standards among members of the licensed professions." *Gunn*, 568 U.S. at 264; *see also Gonzales v. Oregon*, 546 U.S. 243, 270 (2006) (recognizing that "the structure and limitations of federalism" allows the states "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons") (citations and quotations marks omitted). The statutes invoked in the Complaint pertain to the medical profession and the delivery of medical care in Colorado. As a matter of federalism, Colorado courts are best positioned to interpret the applicable statutes.

For *Grable* jurisdiction to attach, all four factors must be resolved in Centura's favor. Here, Centura cannot show any of them. There is no basis for *Grable* jurisdiction in this case.

## **CONCLUSION AND REQUEST FOR FORTHWITH RULING**

Plaintiffs' well-pleaded Complaint does not assert any federal claims and Centura has not established that Plaintiffs' claims are completely preempted by federal law or that Plaintiffs' claims unavoidably raise substantial and disputed federal issues. Accordingly, removal predicated on federal-question jurisdiction was improper and this Action should be remanded to the state court pursuant to 28 U.S.C. § 1447(c).

Plaintiffs respectfully request an expedited ruling on this Motion. As described in the Complaint, Mr. Mahoney is dying of cancer. Plaintiffs intend to request expedited discovery, including a preservation deposition of Mr. Mahoney, but were precluded from doing so by the filing of Centura's notice of removal. Pursuant to D.C.COLO.LCiv.R 7.1(d), the Court may rule

on a motion any time after it is filed. Plaintiffs request that the Court order an expedited briefing schedule on this Motion and/or grant this Motion without further briefing.

DATED this 11th day of September, 2019.

                        *s/ Jason M. Spitalnick*
                        Jason M. Spitalnick
                        Steven J. Wienczkowski
                        Foster Graham Milstein & Calisher, LLP
                        360 South Garfield Street, 6th Floor
                        Denver, Colorado 80209
                        Telephone: 303-333-9810
                        Email: swienczkowski@fostergraham.com;
                        jspitalnick@fostergraham.com
                        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day September, 2019, a true and correct copy of the foregoing was electronically served upon all counsel of record via *ECF*.

                        *s/ Jason M. Spitalnick*